**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| R'KES STARLING, individually and behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No. 1:24-cv-00991-DII |
| PR ADVISORS, LLC, D/B/A PINNACLE REALTY ADVISORS and RAM PROPERTIES, LLC, | |
| Defendants. | |

**DEFENDANT PR ADVISORS, LLC'S MOTION TO DISMISS
<u>PLAINTIFF'S COMPLAINT</u>**

Defendant PR Advisors, LLC, d/b/a Pinnacle Realty Advisors ("Pinnacle"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P 12(b)(6) and/or 12(b)(1), hereby respectfully moves to dismiss the putative class action Complaint (*see* Dkt. 1, "Complaint") filed by Plaintiff R'Kes Starling ("Plaintiff") in the above-captioned matter on the following grounds:

## I.    <u>INTRODUCTION</u>

In his threadbare Complaint, Plaintiff purportedly seeks relief under the National "Do Not Call" ("DNC") Registry provision of the Telephone Consumer Protection Act ("TCPA") and its related implementing regulations.[1] Plaintiff's claim rests squarely on phone calls and/or text messages he allegedly received on a DNC-registered cell phone number that he concludes, without sufficient (or any) requisite factual support, were placed <u>either</u>: (i) by one or both of the "Defendants"—a term used to improperly conflate Pinnacle and RAM Properties, LLC ("RAM") as one entity throughout his Complaint; <u>or</u> (ii) by countless unidentified third party "affiliates, agents, and/or other persons or entities acting on Defendants' behalf." Dkt 1, ¶ 52. As demonstrated below, such bald and equivocating allegations are insufficient to state a plausible TCPA claim under the vast weight of applicable federal authority, making the Complaint ripe for dismissal.

That federal courts uniformly require plaintiffs to plead more than conclusory allegations to survive dismissal at the pleadings stage in TCPA cases is for good reason. As the Court is aware, while it is undoubtedly a beneficial and important law, the TCPA has become one of the most heavily litigated statutes in the United States ever since its enactment in 1991, with dozens of new complaints filed weekly (sometimes daily), most styled as putative class actions like the present case. This is unsurprising given the relief the TCPA affords: it is a strict liability statute with favorable recovery

---

[1] Together, and in pertinent part, the TCPA's DNC rules prohibit, *inter alia*, the "initiat[ion]"of more than one "telephone solicitation" phone call or text message "by or on behalf of the same entity" in a 12-month period to a "residential telephone subscriber who has registered his or her telephone number" on the National DNC Registry. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

provisions (up to $500 in statutory damages per call, which can be trebled to $1,500 for willful/knowing violations). *See* 47 U.S.C. § 227(c)(5). Thus, the TCPA naturally spawns litigation, and it can be quite lucrative for plaintiffs and their counsel alike. And while attorneys' fees are not available under the statute, even "remedial laws [like the TCPA] can be abused and perverted into money-making vehicles for individuals and lawyers" and used to seek a windfall of potentially ruinous damages and exorbitant legal fees from otherwise innocent defendants through costly class action litigation. *Saunders v. NCO Fin. Sys.*, Inc. 910 F. Supp. 2d 464, 465 (E.D.N.Y. 2012).[2]

It is within this backdrop that federal courts have tacitly recognized that, in TCPA cases, they must balance the important goal of protecting consumers from unwanted telemarketing calls against the competing but equally important goal of protecting defendants from abusive litigation, particularly at the pleadings stage in putative class actions. Consequently, TCPA complaints like Plaintiff's, which rest on a foundation of barren conclusions lacking in requisite factual support, are routinely dismissed by courts under Rule 12(b)(6) for not meeting federal pleading standards. Here, Plaintiff's Complaint should suffer the same fate and be dismissed for several reasons:

**First**, the Complaint should be dismissed under Rule 12(b)(6) because Plaintiff fails to state a plausible claim under the TCPA or to plead adequate facts supporting such a claim. To begin, to successfully plead *any* TCPA claim under any provision and avoid dismissal at the pleading stage, all plaintiffs must first adequately allege a viable theory of liability under the TCPA—*i.e.,* direct or vicarious liability. In this case, Plaintiff fails to plead sufficient non-conclusory facts supporting a plausible inference either that Pinnacle: (i) itself, and not a third party, took the steps necessary to

---

[2] *See also Babare v. Sigue Corp.*, 2020 WL 8617424 at *2 (W.D. Wash. Sep. 30, 2020) ("It is well-recognized that discovery in [TCPA] class actions is expensive and asymmetric, with defendants bearing most of the burdens."); *Bank v. City of Menasha,* 627 F.3d 261, 266 (7th Cir. 2010) (noting that plaintiffs can sometimes "us[e] discovery to impose asymmetric costs on [d]efendants in order to force a settlement advantageous to the plaintiff regardless of the merits of his suit").

"physically place" each call or text message at issue, as required to plead direct TCPA liability; or (ii) was in a common law agency relationship with (the touchstone of which in a TCPA case is having sufficient "control" over) any third party who did physically call his cell number and that party's calling campaign,[3] as required to plead vicarious TCPA liability. This pleading defect *alone* is fatal to Plaintiff's *entire* Complaint, as countless district courts in and beyond the Fifth Circuit have found when dismissing similarly-threadbare TCPA complaints. This Court should do the same here.

**Second**, beyond the threshold issues above, the entire Complaint should be dismissed under Rule 12(b)(6) for the additional reason that Plaintiff fails to plead facts supporting the other essential elements for a claim under the TCPA's National DNC Registry provision and its related implementing regulations. On this front, Plaintiff fails to plead actual facts, beyond his bald conclusions, supporting an inference that: (i) he received more than one "telephone solicitation" as defined by the TCPA in a 12-month period physically "initiated" "by or on behalf of the same entity"; or (ii) he qualifies as a "residential telephone subscriber" (*i.e.*, that he actually uses the subject phone number for residential purposes) within the meaning of the statute. Myriad courts have recognized that merely parroting the statutory text in this regard, as Plaintiff did here, cannot avoid a dismissal.

**Third**, Plaintiff's conclusory allegations that any TCPA violation here was "willful" or "knowing," such that he would be entitled to treble damages, likewise do not meet federal pleadings standards. Therefore, those allegations should be dismissed under Rule 12(b)(6), at the minimum.

**Lastly**, if the Court does not dismiss the entire Complaint for the reasons above (and it should), it should still dismiss Plaintiff's requests for injunctive relief under Rule 12(b)(1) for lack of standing under Article III of the U.S. Constitution. To have Article III standing to seek injunctive

---

[3] As discussed below, general control over an agent is insufficient, and what matters in a TCPA case is having control over the "manner and means" of how the call campaign was conducted <u>specifically</u>.

relief in **any** federal case, all plaintiffs must plead non-conclusory facts demonstrating they are at imminent risk of a possible future injury by the defendant. But no such facts were pled here.

## II.    APPLICABLE LEGAL STANDARDS

Rule 12(b)(6) provides for dismissal where a plaintiff fails to sufficiently state a claim for relief. In this regard, any claim brought in federal court mandates the pleading of sufficient facts. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A "bare assertion" and "conclusory allegation[s]" will not suffice. *Id*. Naked allegations without factual enhancements "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations omitted). A "formulaic recitation of the elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[4] Further, "although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead 'specific facts, not mere conclusory allegations'" to avoid dismissal. *Pelayo v. Wells Fargo Bank, N.A*., 2014 WL 3513207, at *2 (W.D. Tex. July 14, 2014) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)).

In other words, "[a]lleging a claim by merely attaching a label and/or legal conclusion to no facts unique to that claim—or, at best, threadbare unique facts—is not sufficient to state a claim that is plausible on its face" or to avoid dismissal under Rule 12(b)(6). *Lowe v. Dallas Police Dep't,* 2017 WL 4863076, at *9 (N.D. Tex. Oct. 17, 2017), *report and rec. adopted*, 2017 WL 4838980 (Oct. 26, 2017). Therefore, while federal district courts must generally accept a plaintiff's well-pled factual allegations as true when ruling on a Rule 12(b)(6) motion, they need <u>not</u> accept as true "[c]onclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp*., 484 F.3d

---

[4] *See also Luckett v. Allstate Indem. Co.,* 2019 WL 1447477, at *5 (S.D. Miss. Mar. 30, 2019) (noting that, after *Twombly*/*Iqbal*, "federal courts have recognized that the pleading requirements of Rule 8 have 'shifted from simple notice pleading to **a more heightened form of pleading**, requiring a plaintiff to plead more than a possibility of relief to survive a motion to dismiss'") (quoting *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3rd Cir. 2009)) (emphasis added).

776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). *See also Bancroft Life & Cas. ICC, Ltd. v. GRBR Ventures, L.P.,* 12 F. Supp. 3d 980, 988 (S.D. Tex. 2014) ("The court should not 'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'") (quoting *R2 Invs. LDC v. Phillips,* 401 F.3d 638, 642 (5th Cir. 2005)); *In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 389 (S.D. Tex. 2011), *aff'd sub nom.* 464 F.App'x 334 (5th Cir. 2012) (under Rule 12(b)(6), "unwarranted speculation … need not be afforded any presumption of veracity by this Court").

A lack of Article III standing further warrants dismissal of a complaint under Rule 12(b)(1), as the Court lacks proper subject matter jurisdiction over such claims. *See, e.g., Perry v. Brassell,* 2018 WL 5733173, at *2 (W.D. Tex. Oct. 18, 2018). Beyond the three traditional elements,[5] to have Article III standing to seek injunctive relief in federal court, Plaintiff must allege plausible facts establishing "continuing, present adverse effects" traceable to Pinnacle's conduct. *O'Shea v. Littleton,* 414 U.S. 488, 495-96 (1974). Put differently, to have standing for injunctive relief in any federal case, all plaintiffs must adequately plead that "the threatened injury is 'certainly impending,' or [that] there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Failure to plausibly allege this warrants dismissal on standing grounds. *See, e.g., Miller v. Time Warner Cable Inc.,* 2016 WL 7471302, at *2–4 (C.D. Cal. Dec. 27, 2016).

## III.  **ARGUMENT**

As discussed above and demonstrated below, countless TCPA complaints like Plaintiff's have been rejected and dismissed at the pleadings stage by district courts in and beyond this Circuit. It is apparent Plaintiff's Complaint fails to plead actual facts supporting a viable theory of liability

---

[5] Though not addressed below, Pinnacle does not concede Plaintiff can satisfy all the traditional elements for Article III standing—*i.e.,* a concrete and particularized "injury-in-fact," causation, and redressability—and therefore reserves the right to address this issue at an appropriate time.

against Pinnacle or the other essential elements of a DNC claim, and it relies instead on threadbare conclusions and speculation, which does not meet federal pleading standards. Nor does Plaintiff demonstrate his standing to seek injunctive relief. These flaws are fatal to his entire Complaint.

A.    **The Entire Complaint Should Be Dismissed Under Rule 12(b)(6) Because Plaintiff Fails to Plausibly Allege a Viable Theory of TCPA Liability.**

For starters, the entire Complaint should be dismissed under Rule 12(b)(b) because Plaintiff does not plead sufficient facts supporting a viable theory of TCPA liability against Pinnacle here.

Again, there are two potential theories of liability under the TCPA: (i) direct liability; or (ii) vicarious liability. *See Rogers v. Postmates Inc.*, 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) (citing *Thomas v. Taco Bell Corp.,* 582 F.App'x 678, 679 (9th Cir. 2014)). As such, to be liable under any provision of the TCPA, the defendant "must either (1) ***directly make*** the call, or (2) have an ***agency relationship*** with the person who made the call." *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (emphasis added) (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)). *Accord Cunningham v. Daybreak Solar Power, LLC*, 2023 WL 3985245, at *2 (N.D. Tex. June 13, 2023) (citing *Cunningham v. Politi,* 2019 WL 2519568, at *5 (E.D. Tex. Apr. 30, 2019), *report and rec. adopted,* 2019 WL 2524736 (June 19, 2019)). Failure to adequately plead these theories warrants dismissal of <u>any</u> TCPA claim in its entirety, even if the plaintiff may have pled facts supporting other essential elements. *See, e.g., Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *9 (D.N.M. Aug. 30, 2023) ("Because Plaintiff fails to satisfy the first elements of the TCPA and [an equivalent state statute]—that Defendants were directly or vicariously liable for the text messages—the Court does not reach Defendants' arguments regarding whether Plaintiff adequately plead the other elements" of the asserted claims.); *Cunningham v. Daybreak Solar*, 2023 WL 3985245, at *2-3 (dismissing entire TCPA complaint ***with prejudice*** asserting some of the same TCPA claims as here on these

bases alone). As shown below, Plaintiff's Complaint here fails to adequately allege either theory.

As to the former liability theory, it is well-accepted both in and beyond the Fifth Circuit that direct liability under the TCPA applies <u>only</u> to persons or entities that "initiate" telemarketing calls, and that to "initiate" in this context means to "physically place" a phone call or send a text message directly. *Sheski v. Shopify (USA) Inc.,* 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (citing *In re Dish Network, LLC,* 2013 WL 1934349, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)). *Accord Cunningham v. Daybreak Solar Power*, 2023 WL 3985245, at *2-3 (citing *Hunsinger v. Dynata LLC,* 2023 WL 2377481, at *5 (N.D. Tex. Feb. 7, 2023), *report and rec. adopted,* 2023 WL 2386710 (Mar. 4, 2023) and *Cunningham v. Lifestyles Dev., LLC,* 2019 WL 4282039, at *3 (E.D. Tex. Aug. 8, 2019), *report and rec. adopted,* 2019 WL 4277507 (Sept. 10, 2019)). *See also Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6, 2023) (holding that all TCPA plaintiffs must first "allege facts from which the Court can plausibly infer that [d]efendant has direct liability, even if it is also plausible that a third party made the call" to avoid dismissal at the pleadings stage).

Thus, federal courts across the country have routinely dismissed direct TCPA liability claims at the pleadings stage under Rule 12(b)(6) that, like Plaintiff's here, lack specific supporting factual allegations suggesting that the defendant itself actually "made" or "initiated" the calls at issue in the sense of "'***tak[ing] the steps necessary to physically place a telephone call.***'" *Cunningham v. Daybreak Solar Power,* 2023 WL 3985245, at *2 (quoting *Cunningham v. Lifestyles*, 2019 WL 4282039, at *3). *See also Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019) (dismissing and holding "at the pleadings stage, [a TCPA] plaintiff must allege facts to support his conclusion or belief that defendant is the party that [physically] made the [violative] calls"); *Brownlee v. Allstate Ins. Co.,* 2021 WL 4306160, at *1 (N.D. Ill. Sept. 22, 2021) (dismissing on this basis and holding that, to avoid dismissal, all TCPA plaintiffs must allege facts to "allow the Court

to reasonably infer that defendant is [directly] liable for ***each call***" at issue) (emphasis added).[6]

In this regard, however, "[m]erely alleging that [a defendant] 'made' or 'initiated' [a] call"—like what Plaintiff did, at best—"is not sufficient to allege a [direct] TCPA [liability] claim" or to avoid dismissal under Rule 12(b)(6), without more. *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at \*2 (E.D. Wash. Oct. 1, 2019). *See also Cunningham v. Daybreak Solar Power*, 2023 WL 3985245, at \*2 ("At the pleading stage, the plaintiff must allege facts to support [a] claim that the defendant is the party that [physically] initiated the phone calls."); *Woodard v. Health Ins. All.,* 2024 WL 942629, at \*3 (N.D. Ill. Mar. 5, 2024) (holding that, to avoid dismissal under Rule 12(b)(6), all "TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal."). "[M]erely offering a good or service for sale does not mean that a retailer [physically] initiates the marketing calls for that product" for direct TCPA liability purposes, either. *Wick v. Twilio Inc.,* 2017 WL 2964855, at \*3 (W.D. Wash. July 12, 2017) (citations omitted). *See also Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at \*3 (N.D. Ill. Mar. 23, 2022) (dismissing, holding: "[A] defendant 'generally does not initiate calls [within the meaning of the TCPA] placed by third-party telemarketers,' even if the third party had acted on its behalf.")

Taking an "either/or" approach and baldly concluding that a "defendant or its agents" called

---

[6] While various provisions of the TCPA use the terms "make" or "initiate" somewhat interchangeably, courts evaluating and ultimately dismissing conclusory direct TCPA liability claims like Plaintiff's (including those cited above and below, among many others) have uniformly held that "make" or "initiate" in this context means to "physically" place the phone calls at issue. *See, e.g., Belleville v. Florida Insur. Services, Inc.,* 2024 WL 2342337, at \*4 (S.D. Fla. May 23, 2024), *report and rec. adopted in part and rejected in part,* 2024 WL 2794108 (May 31, 2024); *Meeks v. Buffalo Wild Wings, Inc.,* 2018 WL 1524067, at \*3–5 (N.D. Cal. Mar. 28, 2018); *Childress v. Liberty Mut. Ins. Co.,* 2018 WL 4684209, at \*3 (D.N.M. Sept. 28, 2018); *Hicks v. Alarm.com,* 2020 WL 9261758, at \*5 (E.D. Va. Aug. 6, 2020). In short, "direct TCPA liability" means just that—the defendant itself, and not a third party, must have physically placed (or made, initiated, transmitted, sent, etc.) each call and text at issue ***directly*** to the plaintiff, for such liability to arise. *See In re Rules and Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 7980 (Jul. 10, 2015) (ruling that there must be a "direct connection between a person or entity and the making of a call" for direct TCPA liability to attach). An alleged ***indirect*** connection, therefore, will not suffice for this purpose.

me (like Plaintiff also did here) likewise does not suffice to plausibly allege direct TCPA liability at the pleadings stage. *See, e.g., Brown v. Nano Hearing Tech OPCP, LLC*, 2024 WL 3367536, at *3 (S.D. Cal. July 9, 2024) (dismissing on this basis where the plaintiff concluded the caller's "numbers belonged to [the defendant] Nano or Nano's agent," without sufficient factual support demonstrating that the defendant itself physically placed each call at issue directly to the plaintiff); *Bank v. Philips Elecs. N. Am. Corp.,* 2015 WL 1650926, at *2 (E.D.N.Y. Apr. 14, 2015) (holding allegations that the subject calls were "made by, or on behalf of, or with the authorization of, an authorized dealer of [defendant]" were "too conclusory to state a plausible claim" for direct TCPA liability).[7] This Court should follow these established principles, and dismiss Plaintiff's Complaint on this basis.

As applied here, Plaintiff fails to plead sufficient actual facts, beyond his many bald conclusions, supporting a plausible inference that Pinnacle itself (as opposed to some unidentified third party or RAM) "physically" placed each of the alleged violative communications at issue in this case, as is indisputably required to plead direct TCPA liability and avoid dismissal under the weight of applicable federal authority above. For example, Plaintiff alleges that he received "at least 1 call" on June 18, 2024 on his purportedly DNC-registered cell phone number from someone named

---

[7] Why federal courts consistently evaluate the facial adequacy of TCPA complaints under Rule 12(b)(6) in this fashion makes perfect sense. After all, it is axiomatic that, in order to survive any motion to dismiss in any federal case, all complaints must provide adequate facts to establish "how, when, and where" a legal violation occurred. *Johnson v. Progressive Advanced Ins. Co.*, 587 F. Supp. 3d 277, 280 (W.D. Pa. 2022). Of course, this includes "who" committed the violation, which is especially important in TCPA cases given that the facial plausibility of any TCPA claim turns largely on whether there are sufficient facts pled identifying the ***actual caller***—*i.e.*, who physically initiated the subject calls or texts, as shown above. *See, e.g.*, *Gulden v. Consol. World Travel Inc.*, 2017 WL 3841491, at *3 (D. Ariz. Feb. 15, 2017) (holding that "[b]ecause [caller] identity is a ***necessary*** element of all of Plaintiff's [TCPA] claims, this deficiency warrants dismissal of all of Plaintiff's claims") (emphasis added). Further, TCPA plaintiffs must adequately plead direct liability in all cases ***without the benefit of discovery*** to avoid dismissal. *See, e.g., Hurley v. Messer,* 2018 WL 4854082, at *4 (S.D.W.Va. Oct. 4, 2018) (dismissing where plaintiff did not sufficiently identify who physically placed the calls, noting "allowing discovery where [p]laintiff has failed to allege a plausible claim would be directly contrary to the mandates of *Iqbal* and *Twombly*"); *Hyatt v. J.B. Hunt Transp. Servs., Inc.*, 2015 WL 13648356, at *2 (W.D. Ark. June 16, 2015) (ruling similarly).

"Cherry" calling from a number with a 351 area code (Dkt. 1, ¶¶ 22-23)—which notably is a **Massachusetts** area code, and not Texas where both he and the "Defendants" are located[8]—but he does not allege any facts suggesting Pinnacle itself physically placed that call, or any others at issue.

Indeed, among other glaring omissions in his Complaint, Plaintiff critically does <u>not</u> allege that: (i) "Cherry" identified herself as a Pinnacle employee, (ii) Pinnacle owns or uses the 351 number that "Cherry" used to call him, (iii) he called that number back and reached Pinnacle itself, or (iv) Pinnacle or its specific services were discussed or identified (let alone even mentioned) by "Cherry"—all of which could support an inference of direct TCPA liability in some cases, as other courts have held. *See, e.g., Smith v. Direct Building Supplies, LLC*, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021) (dismissing where complaint lacked such allegations); *Doyle v. GoHealth, LLC*, 2023 WL 3984951, at *4–6 (D.N.J. Mar. 30, 2023) (dismissing where the plaintiff did "not allege that the number associated with the call …belonged to [d]efendant"); *Aaronson*, 2019 WL 8953349, at *2 (dismissing on this basis, holding: "[W]ithout any facts to explain why plaintiff believes the identified phone number is owned by [the defendant], ... plaintiff has failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations do not show plausibly that [the defendant] actually, physically initiated the telephone calls at issue.").

Perhaps worse, not only does Plaintiff's Complaint improperly conflate and fail to differentiate between the two distinct corporate "Defendants" throughout (which itself warrants its

---

[8] *See* https://www.allareacodes.com/351 (last visited Nov. 22, 2024); Dkt. 1, ¶¶ 5-7, 9 (alleging all named parties are located in Texas). Pinnacle respectfully requests that this Court take judicial notice of this when ruling on this Motion under Fed. R. Evid. 201(b) and (c). *See Norris v. Hearst Tr.,* 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a [Rule] 12(b)(6) motion to take judicial notice of matters of public record."); *see also Herrera v. CarMax Auto Superstores Calif, LLC*, 2014 WL 3398363, at *2 (C.D. Cal. July 2, 2014) ("It is not uncommon for courts to take judicial notice of factual information found on the World Wide Web."); *Schleifer v. Lexus of Manhattan*, 2019 WL 4640055, at *4 (S.D.N.Y. Sept. 24, 2019) (taking notice of area codes).

dismissal),[9] but it also reveals its fatal defects on the direct TCPA liability front from almost the very outset. In this regard, Plaintiff asserts in the preamble that this action is being brought against Pinnacle and RAM "as well as their present, former and future **direct and indirect parent companies, subsidiaries, affiliates, agents and related entities**" as to the alleged communications. Dkt. 1, p. 1 (emphasis added). Many other similarly-equivocating, speculative, and wholly-conclusory allegations about the identity of the callers (*i.e.,* who Plaintiff contends actually physically placed the calls or texts at issue), suggesting that third parties were possibly responsible, then appear throughout the Complaint. *See, e.g., id.* ¶ 4 ("Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls **from or on behalf of Defendants**."); ¶ 36 (putative class definition, including all persons in the U.S. who "received more than one telemarketing text message or call **from or on behalf of a Pinnacle entity**"); ¶ 50 ("Plaintiff alleges that the telephone solicitation calls **made by Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf** that are complained of herein are substantially likely to continue in the future if an injunction is not entered."); ¶ 52 ("The foregoing acts and omissions of **Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf** constitute numerous and multiple violations of the TCPA … by making telemarketing calls….to Plaintiffs and members of the [putative] Class despite their

---

[9] Plaintiff alleges, incorrectly without any factual support, and solely upon "information and belief," that RAM (a distinct corporate entity represented in this matter by separate counsel) is a "sister company for the other Pinnacle entities and is itself a Pinnacle entity." Dkt. 1, ¶ 7. Such conclusions are insufficient under federal pleading standards and need not be accepted as true, either. *See* discussion at pp. 5-6, *supra. See also Legendary Lightning Grp., Inc. v. Optigenex, Inc.,* 2015 WL 3942946, at *4 (E.D. Tex. June 26, 2015) ("'Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard.") (quoting *In re Superior Air Parts, Inc.,* 486 B.R. 728, 740 (Bankr. N.D. Tex. 2012); *Isaacs v. Keller Williams Realty, Inc.,* 2024 WL 2262724, at *6 (S.D. Fla. Apr. 17, 2024), *report and rec. adopted in part,* 2024 WL 2258717 (May 14, 2024) (dismissing TCPA defendant on direct and vicarious liability grounds where plaintiff conflated the "Defendants" and did not specifically identify who placed the calls).

numbers being on the National Do Not Call Registry."); ¶¶ 54-55 (likewise referring to "Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf") (all emphases added). Never once are any of these purported third parties specifically identified. And, of course, a third party allegedly placing a call to a plaintiff and a defendant having some indirect involvement in that call simply is not "direct" TCPA liability as a matter of law, as shown above.

In any event, it is evident from the foregoing that what Plaintiff is really alleging here, at bottom, is that either Pinnacle, or RAM, or countless unidentified third parties are at fault for the calls at issue, which federal courts have found to be "woefully insufficient to state a claim of *any sort*." *Maldonado-Rodriguez v. Citibank, N.A.,* 2013 WL 350814, at *5 (N.D. Ind. Jan. 28, 2013) (emphasis added). That rings especially true when it comes to stating a plausible direct TCPA liability claim, where the identity of the actual caller is the threshold element and must be adequately pled in every case as to *every* call to avoid a dismissal, as the many authorities above show. *See, e.g., Gulden* and *Brown v. Nano, supra*; *Doyle v. GoHealth, LLC,* 2023 WL 3984951, at *1, 4–6 (allegations calls were "from Defendant, its employees and/or agents" insufficient for directly liability, without more). On the whole, Plaintiff's "[c]ontradictory allegations" here not only fail to state a plausible direct TCPA liability claim, but they also "are inherently implausible, and [thus] fail to comply with Rule 8, *Twombly*, and *Iqbal*" and cannot avoid dismissal at the pleadings stage in any federal case. *Hernandez v. Select Portfolio, Inc.,* 2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015). *See also Cicalese v. Univ. of Texas Med. Branch*, 456 F. Supp. 3d 859, 872, n.8 (S.D. Tex. 2020) ("'Where [a] plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss.'") (quoting *Carson Optical Inc. v. eBay Inc.,* 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016)). This Court should reach the same conclusions and reject these flawed allegations on their face.

At best, Plaintiff alleges in a single paragraph that he received "two more text messages" on June 19, 2024 originating from a completely different area code from "Cherry" that he concludes were "from the Defendants"—again improperly conflating Pinnacle and RAM as one entity—and purportedly stating "Ryan McLemore, Pinnacle Realty Advisors." Dkt. 1, ¶ 24.[10] But this is of no moment. For starters, Plaintiff's conclusory allegation that he received these texts "from Defendants" is insufficient under federal pleadings standards to state a plausible directly TCPA liability claim. *See, e.g., Isaacs*, 2024 WL 2262724, at *6 (dismissing TCPA defendant on direct and vicarious liability grounds where plaintiff likewise conflated the "Defendants" and did not specifically identify which defendant placed the calls at issue). Additionally, this one paragraph does not reconcile the many internal inconsistencies and directly contradictory (and thus inherently implausible) allegations in the Complaint discussed above, suggesting that third parties sent the communications at issue, and not Pinnacle. Nor does it suggest that Pinnacle itself physically sent either text or that Pinnacle or RAM physically placed the preceding call by "Cherry" who apparently called from a Massachusetts area code. *See also Brownlee,* 2021 WL 4306160, at *1 (dismissing and holding all TCPA plaintiffs must allege to "allow the Court to reasonably infer that defendant is [directly] liable for ***each call***" at issue) (emphasis added); *Belleville,* 2024 WL 2342337, at *4 (dismissing on this basis where, as here, the plaintiff "provide[d] either insufficient or no facts to support a plausible inference that [the preceding] calls were truly from" the named defendant and not a third party).

Moreover, it is equally well-accepted that even a call or text message allegedly "from" a

---

[10] It is unclear from the screenshot in the Complaint whether there was a single text allegedly received (e.g., the message was too long and it split in "two") or two different texts. From the context, it appears to be one text. Assuming *arguendo* there were two, only the first text (the top one) identifies "Pinnacle" in anyway, but even then it suggests that it may have been a third party calling, and not Pinnacle ***itself*** (which again is not direct TCPA liability as a matter of law). The second text (if there was one) does not identify "Pinnacle." *Id*. Plus, Plaintiff does not allege "Cherry" sent him *any* texts (*id*. ¶ 22), and thus the "Defendants" could not have possibly sent him "more" texts.

defendant or merely offering the defendant's products, identifying the defendant by name, or made by a caller associated with the defendant in some fashion—which, at its core, is <u>all</u> that Plaintiff's Complaint alleges here—does not necessarily mean that the defendant ***itself*** physically placed or sent the communication at issue, and thus is not enough to plausibly allege direct TCPA liability without more. *See, e.g., Cunningham v. Daybreak Solar*, 2023 WL 3985245, at *2 (dismissing on this basis despite similar conclusory allegations); *Bennett,* 2022 WL 865837, at *3 (dismissing and holding that "a defendant 'generally does not initiate calls [within the meaning of the TCPA] placed by third-party telemarketers,' even if the third party had acted on its behalf"); *Smith v. Direct Building Supplies*, 2021 WL 4623275, at *3-4 (dismissing on this basis where at-issue calls were allegedly "from" the defendant, but where plaintiff "provide[d] no details specifying how [he] knew that [defendant itself] in fact [physically] placed these calls"); *Scruggs v. CHW Grp., Inc.,* 2020 WL 9348208, at *7-10 (E.D. Va. Nov. 12, 2020) (conclusory allegations that one caller expressly stated he/she was "associated with" the defendant and identified defendant by name insufficient for direct liability purposes); *Meeks*, 2018 WL 1524067, at *1-5 (no direct liability, even though at-issue text identified defendant by name and its website); *Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *2 (S.D. Ohio July 10, 2015) (dismissing on this basis, even though the plaintiff was "informed that the call was from Choice Energy," where there were "no factual allegations in the complaint that Choice Energy had any active role or involvement in [physically] placing the calls" at issue). This Court should rule similarly here, and dismiss Plaintiff's Complaint on direct liability grounds.

Lastly, other than employing a few legal buzzwords—like "agents" or calls being made "on behalf of" one or both of the "Defendants" as noted above—Plaintiff does not assert any factual allegations supporting an inference that Pinnacle was in a common law agency relationship with any third party that called him. Nor does he allege Pinnacle had any modicum of "control" over the

"manner and means" of any third party caller's call campaign (which is the well-accepted touchstone of vicarious liability in a TCPA case and must also be adequately pled to avoid a dismissal on the pleadings here[11]), even in a conclusory fashion. Applying applicable federal law here, Plaintiff's Complaint should also be dismissed on vicarious TCPA liability grounds. *See, e.g., Cunningham v. Daybreak Solar Power,* 2023 WL 3985245, at *3 (dismissing where "[p]laintiff allege[d] no facts indicating that Defendant had any sort of control over" the alleged caller) (citing *Callier v. SunPath Ltd.,* 2020 WL 10285659, at *3); *Cunningham v. Lifestyles,* 2019 WL 4282039, at *5 (dismissing where complaint was "completely devoid of any facts showing that [defendant] had control over any other defendant, agent, or caller"); *Moreland v. SunPath, Ltd.,* 2021 WL 6773100, at *3 (E.D. Tex. Sept. 10, 2021) ("[C]onclusory allegations that SunPath acted in an agency relationship with unnamed telemarketers 'does not suffice to impute [the telemarketing caller]'s actions to Defendant under an agency theory.'") (quoting *Horton v. SunPath, Ltd.,* 2021 WL 982344, *4 (N.D. Tex. Feb. 16, 2021), *report and rec. adopted,* 2021 WL 977065 (Mar. 15, 2021) (alterations in original)).

All told, Plaintiff's "either/or" pleading tactic has been rejected time and again by countless courts in TCPA cases, where properly identifying the actual caller is of critical importance to potentially ruinous financial liability. Because Plaintiff does not allege plausible facts supporting a viable theory of TCPA liability against Pinnacle here, his entire Complaint should be dismissed under Rule 12(b)(6). *See Daybreak,* 2023 WL 3985245, at *3; *Nelums,* 2023 WL 5607594, at *9.

**B.**    **The Complaint Should Also Be Dismissed Because Plaintiff Fails to Plead Facts Supporting Other Essential Elements of a TCPA DNC Claim.**

Beyond his failure to plead a viable direct and vicarious liability theory, which alone is fatal to his Complaint, Plaintiff's TCPA DNC claim should be dismissed for two additional reasons:

---

[11] *See, e.g., Cunningham v. Daybreak Solar Power,* 2023 WL 3985245, at *3; *Callier v. SunPath Ltd.,* 2020 WL 10285659, at *3 (W.D. Tex. Aug. 10, 2020); *Rogers v. Assurance IQ, LLC,* 2023 WL 2646468, at *6 (W.D. Wash. Mar. 27, 2023); *Meeks*, 2018 WL 1524067, at *6 .

**First**, it is well-settled that TCPA's National DNC Registry restrictions, on their face, apply only to "***residential*** telephone subscribers." 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2) (emphasis added). *See also Cunningham v. Politi,* 2019 WL 2517085, at *4 (dismissing under Rule 12(b)(6), and noting: "The private right of action created by … § 227(c)(5) is accordingly limited to redress for violations of the regulations that concern residential telephone subscribers."). Moreover, district courts in and beyond the Fifth Circuit have widely recognized that plaintiffs hoping to bring TCPA DNC claims must allege sufficient non-conclusory facts showing the subject phone number (*i.e.*, the number at which they received the alleged calls) is ***actually used*** for "residential" purposes, or will face dismissal under Rule 12(b)(6). *See, e.g., Hicks*, 2020 WL 9261758, at *5; *Smith* v. *Vision Solar LLC,* 2020 WL 5632653, at *3; *Cunningham v. Politi,* 2019 WL 2517085, at *4; *Cunningham v. McDonald,* 2018 WL 6737418, at *2 (M.D. Tenn. Nov. 5, 2018), *report and rec. adopted,* 2018 WL 6198417 (Nov. 28, 2018); *Gillam v. Reliance First Capital, LLC,* 2023 WL 2163775, at *4 (E.D.N.Y. Feb. 22, 2023); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *4 (all dismissing).

This has been true notwithstanding the FCC's rebuttable "presumption" regarding the "residential" use of numbers purportedly listed on the National DNC Registry. *See, e.g., Vision Solar LLC*, 2020 WL 5632653, at *3 (dismissing where plaintiff did not sufficiently allege the "cell phone line in question is his residential phone, as required" to state a claim). *See also* Case No. 2:20-cv-02185 (E.D. Pa.), Dkt. 1, ¶ 17 (dismissed complaint in *Vision Solar*, alleging plaintiff's cell phone number was on the National DNC Registry); *Hicks*, 2020 WL 9261758, at *5 ("Plaintiff argues at length that cellular phone numbers are eligible for listing on the Do Not Call registry … but his argument never returns to the facts of ***this*** case or the use of his phone.") (emphasis in original). Just parroting the statute does not suffice. *See, e.g., Morgan v. U.S. Xpress, Inc.,* 2018 WL 3580775, at *2 (W.D. Va. July 25, 2018) (dismissing similar claim applying only to "residential" lines, noting

plaintiff's characterizations that her number is a "residential" line "are not factual allegations, but legal terms drawn from the operative statute" and need to be accepted as true under Rule 12(b)(6)).

Furthermore, courts have also held whether someone qualifies as a "residential" subscriber for purposes of a TCPA DNC claim generally depends on certain conditions, including for example that the subject number "is the primary means of reaching the individual at their residence—that is, there is **_no other landline or phone at their residence_** which is instead the primary means of reaching them" at their residence. *Mantha v. QuoteWizard.com, LLC*, 2022 WL 325722, at *6 (D. Mass. Feb. 3, 2022) (emphasis added). Applying these maxims here further warrants dismissal of the Complaint.

In this case, Plaintiff merely concludes he uses the cell phone number on which he purportedly received the alleged calls and texts "for his own personal, residential, and household needs and reasons." Dkt. 1, ¶ 18.[12] Such bald allegations are insufficient to state a plausible DNC claim, without more, for at least two reasons. On the one hand, Plaintiff's conclusion that his number is used for "residential" purposes is not a fact, merely parrots the language of the statute, and thus need not be accepted as true under Rule 12(b)(6) here. *See Morgan,* 2018 WL 3580775, at *2. *See also Hicks*, 2020 WL 9261758, at *5 (dismissing TCPA DNC claim on this basis, where the plaintiff merely concluded that his cell phone number was "not associated with a business and is for personal use"); *Gillam,* 2023 WL 2163775, at *4 (same, dismissing with prejudice); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *4 (dismissing on this basis, holding that alleged "personal" use of the subject number was insufficient, and noting that "[t]hese are facts that are easily within the knowledge of [p]laintiffs and can be pleaded to remove any doubt about … whether those numbers

---

[12] Plaintiff's conclusion that his cell number is "a residential telephone line because it is assigned to a telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses" (*id.* ¶ 19) not only parrots the statutory text but also does not give any insight on how his cell phone number is **_actually used,_** which is what courts have found matters at the pleadings stage in DNC cases.  For example, one could have a cell number "assigned to an exchange service for consumers" and yet never use it for **_residential_** purposes and use it only to transact business.

are for residential use"). On the other, Plaintiff does not allege any facts suggesting the cell phone number at issue here is the ***primary*** means of reaching him at his ***residence***, let alone that there is ***no landline or other phone at his residence*** that is the primary means of reaching him there. *See, e.g., Mantha,* 2022 WL 325722, at *6. Again, these facts are within Plaintiff's own knowledge and could easily be pled, if they exist. That Plaintiff failed to plead them is telling, and this failing underscores the many fatal defects in his DNC claim and in his Complaint overall. In short, under the weight of applicable federal authority above, Plaintiff has not plausibly alleged he is a "residential telephone subscriber" within the meaning of the TCPA's regulations, which further warrants dismissal here.

**Second**, it is also well-established that Section 227(c) of the TCPA "relates solely to telemarketing and solicitation calls." *Warnick v. Dish Network LLC,* 301 F.R.D. 551, 558 fn. 3 (D. Colo. 2014). Thus, to survive dismissal, Plaintiff must also plead sufficient plausible facts suggesting his receipt of a "telephone solicitation"—which in turn is defined in the TCPA's implementing regulations as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person" without their "prior express invitation or permission." 47 C.F.R. §§ 64.1200(c)(2), (f)(15).

Along these lines, however, federal courts have also frequently dismissed TCPA DNC claims where the plaintiff fails to plead facts—beyond naked conclusions or simply parroting the statutory text—suggesting that a call they received fits the statutory definition of a "telephone solicitation." *See, e.g., Dahdah v. Rocket Mortgage LLC*, 2023 WL 5941730, at *3 (E.D. Mich. Sept. 12, 2023) (dismissing where plaintiff did not sufficiently allege the content of the calls at issue, such that the court could infer his receipt of an actionable "telephone solicitation" within the meaning of the regulations) (citing, *inter alia, Katz v. CrossCountry Mortg., LLC,* 2022 WL 16950481, at *6 (N.D. Ohio Nov. 15, 2022)); *Weingrad v. Top Healthcare Options Ins. Agency Co*., 2024 WL 4228149, at

*3–4 (E.D. Pa. Sept. 17, 2024) (dismissing DNC claim brought by the same counsel representing Plaintiff here on this basis, recognizing that "[c]all recipients must do more than allege the calls in question were telephone solicitations" to state such a claim and avoid dismissal under Rule 12(b)(6)); *Eggleston v. Reward Zone USA LLC,* 2022 WL 886094, at *7 (C.D. Cal. Jan. 28, 2022) ("Plaintiff simply relies on conclusory labels such as 'advertisement' and 'promotion' without any supporting factual detail. This falls short of Plaintiff's burden to plead sufficient factual matter to state a plausible claim" under Section 227(c).). This requirement further warrants dismiss of the whole Complaint.

In this case, Plaintiff at best merely concludes that: (i) "Cherry" was "soliciting [him] for real estate services" of some sort (though apparently ***not Pinnacle-specific*** services) and (ii) he received one or two texts, neither of which expressly encouraged him to rent, purchase, or invest in anything on their face, and instead suggest that Plaintiff solicited the communications. Dkt. 1, ¶¶ 22, 24. These allegations are insufficient to state a plausible DNC claim, as well. *See, e.g., Weingrad,* 2024 WL 4228149, at *3–4 (merely alleging that the "purpose of the call was to sell the Plaintiff health insurance" insufficient and "falls short of the required level" of factual enhancement needed under *Twombly*); *Gillam,* 2023 WL 2163775, at *3 (dismissing on this basis where the plaintiff "failed to allege sufficient facts regarding the content of the calls from which the [c]ourt could infer that the purpose of the calls was to encourage 'the purchase or rental of, or investment in, property, goods, or services'" where, as here, most of the alleged calls were not answered and "merely conclude[d], without any factual support, that [defendant's] agent 'solicit[ed] refinancing products'"); *Dahdah,* 2023 WL 5941730, at *3 (allegations that the defendant "made the calls for the purpose of selling mortgage products and services" insufficient to plead receipt of a "telephone solicitation" for a DNC claim). Therefore, Plaintiff's entire DNC claim should be dismissed for this additional reason.

### C.    Plaintiff Fails to Plead a "Knowing" or "Willful" TCPA Violation.

Apparently attempting to justify seeking treble damages under the TCPA, Plaintiff also avers,

in purely conclusory fashion, that the purported TCPA violations were "negligent, willful, or knowing." Dkt. 1, ¶ 53. This too is insufficient under federal pleading standards and cannot survive dismissal under Rule 12(b)(6), either. *See, e.g., Sterling v. Securus Techs., Inc.*, 2020 WL 2198095, at *6 (D. Conn. May 6, 2020) (dismissing where allegations that TCPA violations were willful/knowing were mere legal conclusions unsupported by specific factual allegations); *Lary v. Trinity Physician Fin. & Ins. Servs.,* 780 F.3d 1101, 1107 (11th Cir. 2015) ("[T]he bare assertion in [plaintiff's] complaint that the defendants 'willfully' and 'knowingly' violated the [TCPA] was a legal conclusion, not an allegation of fact that we must accept as true."). Consequently, the Court should dismiss these plainly-defective allegations under Rule 12(b)(6), at the minimum.

### D.    Additionally, or Alternatively, Plaintiff's Requests for Injunctive Relief Should Be Dismissed Under Rule 12(b)(1) for Lack of Article III Standing.

Finally, among other remedies, Plaintiff generally seeks injunctive relief. *See, e.g.,* Dkt. 1, ¶¶ 44, 50, 55 and Prayer for Relief. Yet, Plaintiff does not allege any facts in his Complaint remotely suggesting that he is at risk of any *future injury* because of Pinnacle (*i.e.*, that at imminent risk of receiving additional calls from or on behalf of Pinnacle in the future), as is required to demonstrate Article III standing for injunctive relief, in TCPA cases or in any others. *See, e.g., Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) ("[P]laintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement [for Article III standing] only by demonstrating a *continuing injury or threatened future injury*.") (emphasis added); *see also Miller,* 2016 WL 7471302, at *2–4 (dismissing request for injunctive relief in TCPA case for lack of standing where no allegations suggesting possible or imminent future harm to plaintiff); Therefore, Plaintiff's blanket requests for injunctive relief should be dismissed on Article III standing grounds under Rule 12(b)(1), as well.

### IV.    CONCLUSION

For all these reasons, the entire Complaint should be dismissed under Rules 12(b)(6) and (1).

Dated: November 26, 2024                    Respectfully submitted,

By: */s/ Leoncio A. Gil, III*

**C. BRENTON KUGLER**
Texas State Bar No. 11756250
brent.kugler@solidcounsel.com
SCHEEF & STONE, L.L.P.
500 North Akard, Suite 2700
Dallas, Texas 75201
(214) 706-4200 - Telephone
(214) 706-4242 – Facsimile

And

**LEONCIO A. GIL, III**
Texas State Bar No. 24094204
leon.gil@solidcounsel.com
SCHEEF & STONE, L.L.P.
2600 Network Blvd., Suite 400
Frisco, Texas 75034
(214) 472-2100 – Telephone
(214) 472-2150 – Facsimile

And

**JOHN W. MCGUINNESS**
jmcguinness@manatt.com
(*Pro Hac Vice* to be requested)
**A. PAUL HEERINGA**
pheeringa@manatt.com
(Pro Hac Vice to be requested)
MANATT, PHELPS &PHILLIPS,LLP
1050 Connecticut Avenue, NW, Suite 600
Washington, D.C. 20036
Telephone: 202-585-6500
Facsimile: 202-585-6600

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on, November 26, 2024, a true and correct copy of the foregoing document was electronically filed with the Court's ECF system to be sent via the electronic notification system to all counsel of record in the above-captioned matter.

By: */s/ Leoncio A. Gil, III*
**LEONCIO A. GIL, III**