## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| R'KES STARLING, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br>   v.<br><br>PR ADVISORS, LLC D/B/A PINNACLE REALTY ADVISORS<br><br>AND RAM PROPERTIES LLC<br><br><br>               Defendants. | Case No.   24-991<br><br><br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## I.    INTRODUCTION

Attempts by the robocalling industry to blame the victims of their calls for failing to allege "sufficient" facts to state a claim for direct liability are nothing new. Trial and appellate courts have had little trouble rejecting such tactics.

But now, it has come to this.

Defendant PR Advisors, LLC, which does business under the name Pinnacle Realty Advisors, and joined by Defendant RAM Properties, LLC, (together, "Defendants"), make a bold assertion without the corresponding factual predicate: that the Plaintiff cannot establish direct liability as to either Defendant, *despite the very text at issue* stating that it was sent from "Ryan McLemore, Pinnacle Realty Advisors." This plain admission in the text of the violative text message makes this case unique, as Defendants are now trying to dismiss the case against them, *despite identifying themselves directly on the violative messages.* The Plaintiff is required to plead no more to meet Rule 8's pleading standards. For this reason, this Court, like nearly every other Court to consider similar form motions, should reject it.

Defendants' hodgepodge of other attempts aimed at dismissing the case under Rules 12(b)(6) and 12(b)(1) fare no better because multiple courts and the FCC have rejected the Defendants' underdeveloped arguments in this regard.

Defendants' motion should therefore be denied in its entirety.

## II.    FACTUAL BACKGROUND

The original complaint in this matter was filed on August 26, 2024 against the Defendants, PR Advisors LLC, which does business under the name Pinnacle Realty Advisors, and RAM Properties LLC, the company owned by the agent, Ryan McLemore, that physically sent the illegal text messages and directed the calls at issue. (ECF No. 1). The original complaint contains far greater information than necessary at the pleadings stage to prove the Defendants'

direct liability for the calls at issue, including a screenshot of the illegal text messages whereby the Defendants *literally say that they are Defendant Pinnacle.* Denying the obvious, Defendant PR Advisors LLC has filed a motion to dismiss essentially denying liability, claiming it did nothing, with which RAM Properties has joined. (ECF Nos. 11, 14). This response follows.

### III.    LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests." *Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741, 744 (5th Cir. 2010) (cleaned up). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Connelly*, 809 F.3d at 786–87. After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* A complaint may be dismissed only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. *Twombly*, 550 U.S. at 570.

The standard for 12(b)(1) challenges for a lack of subject matter jurisdiction, which is only addressed at the end of the Defendants' brief, are well-settled in this circuit. Notably, there exist two types of 12(b)(1) challenges, each with their corresponding standards: facial and factual

challenges. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Defendants appear to mount a facial challenge to the Plaintiff's complaint as it submits no additional evidence for the Cour to consider. A facial challenge goes to the sufficiency of the pleading itself, and in such a motion, the court must take the allegations of the complaint as true and construe them in the light most favorable to the nonmoving party. *Id.* As with a motion under Rule 12(b)(6), a motion under 12(b)(1) should be granted only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992). In sum, "It is inappropriate for the court to focus on the merits of the case when considering the issue of standing." *Grant ex rel. Fam. Eldercare v. Gilbert*, 324 F.3d 383, 387 (5th Cir. 2003).

## IV.    ARGUMENT

A.    *The Plaintiff has alleged direct liability in far greater detail than in other similar cases. Courts have already determined those allegations sufficient to infer direct liability.*

In essence, the Defendants attempt the classic "we didn't do it" defense by disguising it as a challenge to the Plaintiff's allegations of direct liability at the pleadings stage. Rule 12(b)(6) is not an appropriate device for testing the truth of what is asserted in the complaint or for determining whether the plaintiff has any evidence to back up what is in the complaint. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002). However, that's precisely what the Defendants attempt to do here, making a red-herring argument that the Plaintiff has failed to state a claim because he has allegedly failed to set forth facts giving rise to direct liability that the Defendants placed the calls at issue. But that's a "red herring" that begs the question "who did, then?" *See Consol. Grain & Barge, Inc. v. Anny*, No. CIV.A. 11-2204, 2013 WL 486687, at *6 (E.D. La. Feb. 6, 2013). Nevertheless, the Plaintiff has met his burden of pleading facts sufficient to give rise to the inference that the Defendants placed the illegal calls at issue here.

3

The Plaintiff's complaint gives more than adequate notice of the Plaintiff's claims and the grounds upon which they rest. Indeed, in Paragraph 24 of his complaint, Mr. Starling identifies two text messages, from the same telephone number, from "Ryan McLemore" at "Pinnacle Realty Advisors." Nothing about that is "threadbare.":

Hi R'Kes, this is Ryan McLemore, Pinnacle Realty Advisors.

Defendants shot themselves in the foot by admitting, in the content of the text messages themselves, that they placed them. Given that level of detail, Defendants' assertions that they did not send any of the calls or texts at issue is especially perplexing. Indeed, this Court can take judicial notice of *Defendant Pinnacle's very own website*, which confirms that Mr. McLemore is a Pinnacle Real Estate Agent and has a Pinnacle email address:



*Ryan McLemore - Agents*, PINNACLE REALTY ADVISORS, https://pinnaclera.com/agents/ryan-mclemore [https://archive.md/3AhRS].

The Defendants' "we didn't do it" argument is more properly the subject of a jury trial or at the very least a motion for summary judgment. These details surrounding the calls and text messages are more than sufficient to put Defendants on notice of the claim being asserted and

that they are alleged to have made telemarketing calls directly to Plaintiff, through Mr.

McLemore, as permitted by the TCPA while still imposing direct liability. *See Worsham v. TSS*

*Consulting Grp.*, LLC, No. 6:18-CV-1692-LHP, 2023 WL 2664203, at *10 (M.D. Fla. Mar. 28,

2023) (reciting the law that, under the TCPA, an entity can "make" a call through another). The

admission of direct liability is right there, in plain blank and white, in the text of the Complaint.

What appears to be the relationship here, the specific *minutiae* of which the Plaintiff is

not required to allege at the pleadings stage, is one of a captive real estate agent, Mr. McLemore,

with his own company, Defendant RAM Properties (which, upon information and belief, stands

for Ryan A. McLemore), which Pinnacle has authorized to do business under the Pinnacle brand

name as the sponsoring broker. In fact, public records reveal that Mr. McLemore is a Real Estate

Sales Agent and lists Defendant "PR Advisors, LLC" as the "Sponsoring Broker" on his license.

*McLemore, Ryan*, TEXAS REAL ESTATE COMMISSION, https://www.trec.texas.gov/apps/license-

holder-search/?detail_id=999987236 [https://archive.md/FCuxa].

This relationship is the norm in the insurance and real estate contexts, and courts have

nearly unanimously held such allegations, similar to those pled in the complaint, to not only

survive the pleadings stage, but also summary judgment. *See, e.g.*, *Hossfeld v. Allstate Ins. Co.*,

726 F. Supp. 3d 852, 877 (N.D. Ill. 2024) (imputing, at summary judgment, both Allstate agent's

and that agent's third-party telemarketing vendor's and subvendor's TCPA violations to Allstate

as principal and noting that "Allstate does not seriously dispute that its contractual relationships

with Fleming and Gilmond created a principal-agent relationship in law."); *Nater v. State Farm*

*Mut. Auto. Ins. Co.*, No. 23-CV-1408-JES, 2024 WL 2155249, at *10 (C.D. Ill. May 14, 2024);

*Havassy v. Keller Williams Realty, Inc.*, No. CV 21-4608, 2024 WL 1640984, at *6 (E.D. Pa.

5

Apr. 16, 2024) (holding Keller Williams liable for agent's actions and imputing an agency relationship based on representations on Keller Williams' website).

*Havassy*, where there was an even more tenuous connection, is particularly apt to the circumstances here, where the caller literally admitted that it was Defendant Pinnacle. There, as here, Keller Williams' website included a search function that listed the caller as an "agent" of "Keller Willams" for a brokerage "team." *Id.* There, as here, the email address for the caller incorporated the corporate domain–there "@kw.com", and here "@pinnaclera.com." *Id.* There, as here, the agent and caller listed on his LinkedIn page that they were a "Realtor" with "Keller Williams." *Id.* And there, the Court had no trouble dispensing with the argument that the players involved were legally distinct and separate entities. It reasoned, "[t]hat may be so, but that does not mean they are unrelated. They both use the same name, 'Keller Williams.' They both benefit from the Keller Williams brand." *Id.* So too here, where Mr. McLemore benefitted from the Pinnacle brand in sending the illegal text messages at issue to the Plaintiff. And unlike here, where Pinnacle *sponsored* McLemore, in that case, Keller Williams was not a sponsoring broker.

Tellingly, the Defendants do *not* have any explanation for why the Plaintiff received text messages directly identifying Defendant Pinnacle with Pinnacle's agent's name on the text message if they didn't place the calls. For all intents and purposes, Defendants attempt a smoke-and-mirrors game of purported deficiencies in the complaint in an ill-contrived effort to escape liability under the TCPA. Even assuming, *arguendo*, that there is some contractual or other limitation delineating the specific relationship between the Defendants so as to render Mr. McLemore's marketing operations supposedly "independent," this is insufficient for the Defendants to obtain dismissal, as the Court observed in *Havassy*:

> WRI denies any direct connection between it and Hewitt and Houston, arguing that they work with an independent market center. KWRI does not require independent realtors to

participate in any KWRI training. KWRI claims Hewitt and Houston, as independent realtors, communicate with customers for their own benefit. These contentions are belied by the control KWRI dictates in the licensing agreement.

That KWRI employees did not make the phone calls does not mean KWRI had no connection to them. Houston and Hewitt, as prescribed in KWRI's guidelines, used KWRI's name when they called potential customers and identified themselves as associated with "Keller Williams." KWRI controls all advertising and marketing that the Keller Williams Bethlehem office and its agents, Houston and Hewitt, perform using KWRI's name. Using the Keller Williams logo and the Keller Williams domain in their email addresses enhances KWRI's brand and consequently its profits. . . . Hence, we conclude that KWRI's conduct is related to Havassy's claims.

*Id.* at *6–*7 (cleaned up). A litany of other courts has agreed and applied nearly identical reasoning in applying direct and vicarious liability to circumstances similar to those here, where goods are sold through brokerages or multiple parties are involved in the sales process. *See, e.g.*, *Cunningham v. Wallace & Graham*, No. 1:24-CV-00221, 2024 WL 4826798, at *3 (M.D.N.C. Nov. 19, 2024) ("The complaint alleges that Sokolove partnered with Wallace & Graham to solicit Camp Lejeune claimants through telemarketing efforts and that Wallace & Graham and Rhine Law Firm were both signatories of the proposed retainer agreement sent to Cunningham after the calls. These allegations, which must be accepted as true, provide a sufficient basis for 'draw[ing] the reasonable inference that the defendant[s] [are] liable for the misconduct alleged.'"); *Bumpus v. Realogy Brokerage Grp. LLC*, No. 3:19-CV-03309-JD, 2022 WL 867256, at *7 (N.D. Cal. Mar. 23, 2022) (certifying TCPA class against brokerage for actions of purportedly independent agents); *Chinitz v. Intero Real Est. Servs.*, No. 18-CV-05623-BLF, 2021 WL 1375837, at *5 (N.D. Cal. Apr. 12, 2021) ("The Court finds that Defendant is vicariously liable for calls made by its corporate sales associates and agents based on apparent authority."); *McMorrow v. Core Properties, LLC*, No. 4:23-CV-00126-JAR, 2023 WL 8697795, at *13 (E.D. Mo. Dec. 15, 2023) ("[T]he Court finds that Plaintiff has established that Core Properties provided apparent authority to 1000 CAD to send the text messages to Plaintiff."); *Hayhurst v.*

*Keller Williams Realty, Inc.*, No. 1:19CV657, 2020 WL 4208046, at *6 (M.D.N.C. July 22, 2020) ("At this stage of the proceedings, Hayhurst has sufficiently alleged an agency relationship between Keller Williams and the individuals who called him.").

Defendants, and only the Defendants, are in the best, and only, position to identify any contrary facts which would explain who else would have directly placed the calls directly naming Defendant Pinnacle and Mr. McLemore. The entire motion is tone-deaf to the fact that the Plaintiff has *pled a text message directly naming Pinnacle* and explicitly referencing the previous caller, "Cherry," as a "colleague." Defendants have not done so and instead elected to throw all their efforts into moving to dismiss the complaint based on allegedly inadequate allegations which were concocted entirely by the Defendants for exactly such a scenario. If what Plaintiff has pled is not sufficient to establish direct liability, then nothing is.

Defendants make much of the initial call which precipitated the contact, a call from an individual named "Cherry" the day prior. But that is no matter; *even if* the Defendants did not place the "Cherry" call pled in the Complaint, they still unquestionably placed the two text messages, from the same phone number, reproduced in Paragraph 24. Those text messages still violate the TCPA. Even so, the Plaintiff has pled sufficient facts, based on the Defendants' own representations in the text messages, that "Cherry" is simply another "colleague," or co-worker, working with Defendant Pinnacle and McLemore's office, Defendant RAM. For that matter, the area code difference accounts for little; nationwide companies conducting nationwide business often call from various caller IDs and area codes.

Nor does the Plaintiff improperly lump together the Defendants, as the Defendants allege. As the Eighth Circuit has explained, one need not plead the exact nature of the relationship between a company and the agents through which it acts:

> In the analogous context of tort law, individuals are generally liable for any torts they commit, even those committed in the scope of their employment or in their role as corporate officers. . . . Nor does the TCPA require that an officer's business be found liable before the officer may be held liable, as the defendants argued here. Simply put, "any person" who violates the TCPA may be liable.

*Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 960 (8th Cir. 2019). The failure to allege the specific details of the relationship between a corporation and its employees and agents does not cause the Plaintiff to improperly "lump defendants together." To the contrary, the Plaintiff here pleads a streamlined, distinct set of facts: three violations of the TCPA for one call and two text messages that occurred in two days, with clear indications of connection and knowledge, which came from Mr. McLemore with Pinnacle, his sponsoring broker, as well as that of his company.

To this end, this case is nothing like the meaningless string cite identifying other cases where plaintiffs were held to improperly lump the defendants together or insufficiently plead direct liability. This case is nothing like *Isaacs v. Keller Williams Realty, Inc.*, where the court dismissed claims against Keller Williams without prejudice because the plaintiff did "not include allegations regarding the employment of the Agent." No. 23-CV-81393, 2024 WL 2262724, at *7 (S.D. Fla. Apr. 17, 2024). Not so here, where Plaintiff alleges that the text messages themselves identified the sender as Mr. McLemore with "Pinnacle Realty Advisors," as confirmed on Pinnacle's own website and government licensing records. *Contra id.* at *1 (stating that the text message only stated "Hello Jeffrey good morning, this is Nico. I have been trying to reach you, to talk about your house in homeland."). And this case is also nothing like the Magistrate Judge's rejected report and recommendations in *Belleville v. Florida Ins. Serv's., Inc.*, where the plaintiff failed to plead the contents of the sales pitch or how he linked calls back to the number that called him to the defendant. Here, Plaintiff includes a screenshot of the text messages, the Defendants have admitted their identities, and Defendants plead to no facts to

contradict the eminently plausible inference that the Defendants placed them, as this court is required to credit at this stage. No. 23-CV-14369-AMC/SMM, 2024 WL 2342337, at *4 (S.D. Fla. May 23, 2024), report and recommendation adopted in part, rejected in part, No. 23-14369-CIV, 2024 WL 2794108 (S.D. Fla. May 31, 2024).

*Brownlee v. Allstate* provides little solace to the Defendants and actually supports the Plaintiff in this regard. There, the plaintiff merely pled that she received facially unrelated calls from at least six *different* callers trying to sell her car insurance. No. 21-CV-1428, 2021 WL 4306160, at *1 (N.D. Ill. Sept. 22, 2021). In only three of the calls was the plaintiff affirmatively able to identify the defendant, such as via email sent to her. *Id.* The plaintiff pled no way to connect the remaining three calls to the defendant and so Court dismissed those calls without prejudice. *Id.* Here, the Plaintiff has affirmatively identified the two text messages he received as originating from the Defendants and pleads enough temporal and spatial proximity to the "Cherry" call to further link that call to the Defendants as well.

In sum, the cases cited by Defendants were all deficient either because (1) they failed to distinguish between the conduct of various named defendants in alleging that all of the defendants initiated the calls to them and/or (2) they failed to allege why they believed the defendant called them. In *Cunningham v. Daybreak Solar Power, LLC*, for example, the plaintiff received calls which were identified as "The-Solar-Project.com," which were then admittedly *transferred* to the defendant. No. 4:22-CV-00599-O, 2023 WL 3985245, at *1 (N.D. Tex. June 13, 2023). On that basis, the Court held that there was no factual support for the contention that the defendant, and not The Solar Project, was directly liable for the calls at issue and therefore dismissed the case. *Id.* at 3. And in *Woodard v. Health Ins. All.*, Court dismissed a direct liability claim against HIA when the plaintiff alleged "in the same breath" that "a third party," not HIA,

10

called her and lacked any allegations as to the third-party's agency. *Woodard v. Health Ins. All.*, No. 23 C 2630, 2024 WL 942629, at \*2 (N.D. Ill. Mar. 5, 2024). So too in *Doyle v. GoHealth, LLC*, where, like in *Woodard*, Court held insufficient allegations of direct liability when an agent stated that she worked for GoHealth but in the same breath "stated a bunch of insurance companies that her company works with." *Doyle v. GoHealth, LLC*, No. CV 22-04291, 2023 WL 3984951, at \*1 (D.N.J. Mar. 30, 2023). Similarly, the Court in *Direct Building Supplies* held as insufficient investigative efforts where the Plaintiff *did not answer a call* but rather called the caller ID *back* and was connected to the defendant. *Smith v. Direct Building Supplies LLC*, No. CV 20-3583, 2021 WL 4623275, at \*3 (E.D. Pa. Oct. 7, 2021).

    None of those cases apply to the circumstances here, where no transfers were made and the Defendants–and only the Defendants–directly identified themselves by name.

    Direct identification by name is the strongest indicia of direct liability that there is. To that end, some of the Defendants' citations actually support the Plaintiff and a finding of direct liability under circumstances similar to those here. *Frank v. Cannabis & Glass, LLC*, No. 2:19-CV-00250-SAB, 2019 WL 4855378, at \*2 (E.D. Wash. Oct. 1, 2019), actually supports the Plaintiff because there, as here, the seller was named in the text messages. There, where the complaint was devoid of any facts indicating that Springbig, a cannabis marketing platform, sent text messages which, as here, named Cannabis & Glass, and the case was dismissed as to Springbig. *Id.* Similarly, the Court that decided *Direct Building Supplies* later rejected *a nearly identical motion filed by Defendant Pinnacle's counsel here* on the basis of that case. *Smith v. Am.-Amicable Life Ins. Co. of Texas*, No. CV 22-333, 2022 WL 1003762, at \*2 (E.D. Pa. Apr. 4, 2022). This Court should reach the same conclusions as the Eastern District of Pennsylvania with respect to the same attorney's specious motion in holding sufficient allegations that during the

calls the plaintiff was told that he was "speaking with American-Amicable" and allegations that the calls "concerned insurance benefits–American-Amicable's area of business." *Id.* So too here, where Defendants admitted where they were calling from.

Here, the Plaintiff pleads facts which permit the court to plausibly determine that the Defendants were directly responsible for the alleged conduct and that the Defendants acted unlawfully, as explained above. And despite the Defendants taking issue with the fact that the Plaintiff caught them red-handed in black and white by the very words they wrote, they provide no plausible counter explanation for their apparent theory (which is also inappropriate at this stage of the proceedings in any event), that some impostor sent the text messages in a vain attempt to pull the wool over the Court's eyes and convince this Court that the Plaintiff has not pled sufficient facts to demonstrate the Defendants' involvement at the pleadings stage.

Recently, Magistrate Bemporad rejected this very tactic in another TCPA case and explained the unfounded nature of the Defendants' argument in *Cunningham v. Watts Guerra*, LLP. No. SA-22-CV-363-OLG (HJB), 2024 U.S. Dist. LEXIS 93370, at *4 (W.D. Tex. May 23, 2024). In *Watts Guerra*, as here, the defendant attempted to argue that the plaintiff did not sufficiently allege direct liability for illegal calls which resulted in the plaintiff receiving a signed retainer agreement from the defendant. The Court explained that the possession of a document naming the defendants was sufficient to give rise to an inference of direct liability for the calls:

> Defendants argue that, while Plaintiff does allege he received automated calls from a rotating series of phone numbers, he "makes no allegation that any particular Defendant . . . made, or directed to be made, these calls." Without such specificity, Defendants contend, Plaintiff failed to state a plausible claim against any of the Defendants for a TCPA violation. . . . Plaintiff responds that, while "unable to identify which of the Defendants [in particular] placed, or caused to be placed, the robocalls," he did eventually "identify Defendants as the entities responsible for those robocalls." Plaintiff argues that his allegation of Defendants' joint involvement "is supported by . . . the retainer attached to the complaint, and the follow-up communications thereafter."

Given Plaintiff's allegations that he was solicited by robocallers to file a Camp Lejeune claim, that the callers refused to identify themselves or the law firms on whose behalf or for whose benefit they were calling unless Plaintiff agreed to file such a claim, and in light of the documents Plaintiff received from WG LLC, Biltmore, Boxer, and Henson after agreeing (under a pseudonym) to file said claim, the Court should find that Plaintiff has raised a plausible claim against these Defendants.

*Watts Guerra*, 2024 U.S. Dist. LEXIS 93370, at *33–36 (cleaned up).

The Court in *Watts Guerra* also went on to explain why the "defendants' argument," identical to the one here that more specificity is required at the pleadings stage, was "untenable." *Id.* at *36. It stated, "To require more would effectively immunize savvier TCPA violators from liability—i.e., those with the wherewithal and means to use middlemen—or a series of increasingly removed middlemen—to solicit business through prohibited robocalling operations. Or, as Plaintiff put it, "Defendants' argument, if tenable, would reward robocallers for attempting to obfuscate their identity in order to prevent TCPA liability." *Id.* (cleaned up). The Court further concluded that adopting the defendants' argument would run afoul of recent Fifth Circuit precedent, which requires a court to deem a claim "plausible" when "it relies on reasonable inferences drawn from the later-revealed identity of the caller or their beneficiary." *Id.* "Requiring anything more would demand speculation by the plaintiff." *Id.* (citing *Bryant v. Ditech Fin., L.L.C.*, No. 23-10416, 2024 U.S. App. LEXIS 5100, at *7 (5th Cir. Mar. 1, 2024) (holding that "defendants cannot defeat plausible inferences using speculation.")).

Especially in light of this Court's recent wholesale rejection of the Defendants' very argument in *Watts Guerra*, the Plaintiff has unquestionably pled a direct liability claim for relief under the TCPA because he has pled sufficient facts in Defendants' own black and white words admitting that they directly placed the calls at issue. Defendants cannot defeat that plausible inference using speculation, for there is no inquiry without a starting point, and the starting points must be accepted as known in some sense, even if they are not known in the strictest

sense. To attempt to doubt these starting points at the outset would prevent any inquiry from proceeding. Should this Court at all find the Plaintiff's pleading at all deficient, the Court only need give the order granting the Plaintiff leave to amend and he will do so to rectify any perceived deficiency.

B.      *The Plaintiff has plainly alleged the requirements for a TCPA DNC claim because he received three calls to his residential cell phone to sell real estate services.*

As to their second reasons for why they claim this case ought to be dismissed, the Defendants claim that the Plaintiff has failed to allege that he received the calls to a "residential" cell phone and that they were not "telephone solicitations." The court can easily dispense with the latter subargument first, which ignores the black and white content of the text messages, again stretches credulity, and borders on the absurd. The plain text of the text messages, as shown in the Complaint, show that they were sent in an attempt to get the Plaintiff to list his home on "Village Green Dr." with the Defendants, who are Realtors. Defendants advertised their prowess and expertise in this regard, bragging that they were prepared to "create the craziest bidding war Southlake has ever seen," and that they would be happy to "swing by" to "give you an idea on what your home should trade for." (Compl. ¶ 24). Defendants again strain credibility if they think that those communications do not qualify as calls made to "encourage[] the purchase or rental of, or investment in . . . services," specifically real estate listing services. 47 C.F.R. §§ 64.1200(c)(2), (f)(15). These allegations plausibly suggest calls made not only encourage but also advertise and differentiate the quality for the purchase of real estate services and thus are telephone solicitations. *See Miholich v. Senior Life Ins.*, 2022 U.S. Dist. LEXIS 23981, *15-16 (S.D. Cal. Feb. 10, 2022) (holding as sufficient allegations where "[t]he FAC alleges that the text messages advertised 'Financed Leads,' contained a link to webinar provided by Defendant, and were 'an attempt to promote or sell Defendant's services.'").

14

The contrary authorities are simply not on point, particularly because none of the authorities cite the actual text of the messages or calls, as here. For example, in *Eggleston v. Reward Zone USA LLC*, 2022 U.S. Dist. LEXIS 20928 (C.D. Cal. Jan. 28, 2022), the plaintiff "simply relie[d] on conclusory labels such as "advertisement" or "promotion" without any supporting factual detail." *Id.* at * 17.  So too in *Dahadah*, *Katz*, and *Weingrad*, where no content was pled, unlike here, rendering those cases easily distinguishable.

And, as to the specious allegation that the Plaintiff's cell phone is not a residential line, this allegation stands in stark contrast to the Plaintiff's plain allegation that he received the calls to residential telephone line, that he uses the telephone number "for his own personal, residential, and household needs and reasons," and that the telephone number is assigned to a residential telephone exchange service "for consumers and is not assigned to a telephone exchange service for businesses." (Compl. ¶ 17–19). It's difficult to imagine what further pleading the Defendants want. Nothing more needs to be said. These are not mere conclusions. The allegations plainly state, with support, including pleading facts as to *the exact type of service to which the Plaintiff subscribes*, that the phone number at issue qualifies as a "residential" telephone number.

*Huber v. Pro Custom Solar, LLC*, 2020 U.S. Dist. LEXIS 87025 at *12 (M.D. Pa. May 18, 2020) (cleaned up) is on point. In *Huber*, the Court noted that, in less detail than here:

> Plaintiff's complaint submits, 'Plaintiff Huber's telephone . . . is a residential telephone line' and 'is not associated with a business and is for personal use.' These straightforward, unequivocal, declarative statements present allegations of fact which must be taken as true at the pleading stage. Taking all allegations as true, Plaintiff has met his burden to show that this telephone line is a residential telephone line[.]

As yet another court explained:

> A plaintiff may provide specific facts to support his allegation that his cell phone is residential under the TCPA. However, it is not required that a plaintiff provide extensive detail to state a plausible claim as to the residential character of his cell phone. Here, the Complaint explicitly alleges that the Plaintiffs' cell phone numbers are used 'for

15

> residential purposes.' While the Complaint does not allege additional facts to elaborate
> on the residential nature of Plaintiffs' cell phones, we conclude that the explicit allegation
> that the cell phone numbers were used 'for residential purposes' is sufficient to plausibly
> allege that they were, in fact, used for such purposes[.]

*Marks v. Unique Lifestyle Vacations, LLC*, No. CV 20-4915-KSM, 2021 WL 5495778, at *3

(E.D. Pa. Nov. 22, 2021). Numerous other cases are in accord. *See, e.g.*, *Izor v. Abacus Data*

*Sys.*, 2019 U.S. Dist. LEXIS 130865, * 5 (N.D. Cal. Aug. 5, 2019) (holding plaintiff adequately

alleged he was called on a residential telephone number where he "affirmatively alleges that 'his

cellular phone number is not currently associated with a business and is for personal use.'"); *Gill*

*v. Align Tech., Inc.*, 2022 U.S. Dist. LEXIS 87464, *8 (E.D. Wisc. May 16, 2022) ("Plaintiff's

allegations that her wireless phone is a non-business, personal use phone that is registered on the

do-not-call list is sufficient to allege that the phone was residential use."); *Rosenberg v.*

*LoanDepot.com, LLC*, 435 F.Supp. 3d 308, 324 (D. Mass 2020) (finding that a plaintiff alleging

he "placed his cellular phone number on the National Do Not Call registry and that he uses his

cell phone as a residential line" was sufficient to survive a motion to dismiss); *Becker v. Pro*

*Custom Solar LLC*, No. 19-cv-535, 2020 U.S. Dist. LEXIS 14310 (M.D. Fla. Jan. 29, 2020).

How does the FCC, the agency charged with implementing rules for Do Not Call

Registry, define "residential subscriber" as opposed to "business subscriber?" Quite simply. As

with any question of statutory interpretation, the court's inquiry "begins with the text." *Ross v.*

*Blake*, 578 U.S. 632, 638 (2016). And, under the TCPA, a "residential subscriber refers to a

subscriber to telephone exchange service that is not a business subscriber" and a business

subscriber is a "subscriber to telephone exchange service for businesses." 47 C.F.R. §

64.2305(b), (d). This language excludes only one type of service–telephone exchange services

for businesses–from the protections afforded by the DNC. The fact the regulation contains only

one exclusion demonstrates that the regulation errs on the side of being overinclusive, not

16

underinclusive. The Plaintiff has pled that he is a subscriber to a telephone exchange service for consumers. (Compl. ¶ 19). Nothing more is required. At the pleadings stage, this is sufficient.

What's more, the FCC has adopted enhanced protective standards for cellular telephone numbers. To this end, the FCC has established a presumption that "wireless subscribers who ask to be put on the national do-not-call list *are residential subscribers*." *FCC Report and Order*, 18 FCC Rcd. 14014, 14039 (2003) (cleaned up) (emphasis added). This is so, *even if they also use such numbers partially for business purposes.* Indeed, the Fourth Circuit in *Krakauer v. Dish Network, L.L.C*, 925 F.3d 643, 657 (4th Cir. 2019), concluded the TCPA's language was clear and that numbers on the Do Not Call Registry, by virtue of their mere registration, are *presumptively residential*. Courts nationwide have agreed. *See, e.g.*, *Tsolumba v. SelectQuote Ins. Servs.*, No. 5:22-CV-00712, 2023 WL 6146644, at *5 n.3 (N.D. Ohio Sept. 20, 2023) ("This Court therefore joins the majority of courts throughout the country who have held that cell phones like [plaintiff's] are entitled to the TCPA's protection as residential telephones.")

Regardless, the cases cited by the Defendants are completely off base. In *Hicks v. Alarm.com*, the Court found liability was implausible given other "infirmities in the underlying complaint" and thus gave short shrift to the issue here and did not address the FCC's orders concerning the meaning of "residential telephone subscriber." No. 1:20-CV-532, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020). The Plaintiff in *Smith v. Vision Solar LLC*, merely conclusorily pled that his phone was a "residential phone" without more, and the Court there granted leave to amend. No. CV 20-2185, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020). So too with *Cunningham v. McDonald*, *Gillam v. Reliance First Cap., LLC*, and *Rogers v. Assurance IQ, LLC*, all of which pled variations of conclusory terms like "residential landline." And *Cunningham v. Politi* failed to acknowledge the aforementioned authorities that

unequivocally recognize that wireless numbers can be listed on the DNC Registry. At least one court interpreting *Politi* has recognized it as an "isolated authority" that is contrary to "common sense." *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 131 (N.D. Tex. 2020).

C.    *The Defendants' unlawful conduct demonstrates "knowing" and "willful" violations of the TCPA.*

The TCPA provides for treble damages for any entity violating the TCPA "knowingly" or "willfully." The Defendants claim that the Plaintiff's allegations of such damages are "purely conclusory." However, such an argument ignores the specificity of the Plaintiff's allegations, including that it knew that it was acting intentionally. In interpreting the willful or knowing standard, courts require only that a party's actions were intentional, not that it was aware that it was violating the statute. *See, e.g.*, *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1151 (N.D. Ill. 2014) ("willful or knowing violation of TCPA requires only that defendant know of the facts constituting the offense"); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 U.S. Dist. LEXIS 37310 (N.D. Ill. Mar. 19, 2013) ("[T]he Court adopts the more common interpretation that 'willfully' or 'knowingly' simply requires that the act be intentional or volitional, as opposed to inadvertent, and not that defendant must have known that the conduct would violate the statute."). The aforementioned allegations plainly demonstrate that the Defendants were taking intentional actions. The Defendants cannot credibly allege that its actions in sending text messages advertising their real estate services were inadvertent. Rather, they were explicit and deliberate. Such allegations are more than sufficient to put Defendants on notice of the potential for the fact that a fact finder can determine that a violation of the TCPA was done in a "knowing" or "willful" manner.

D.    *Injunctive relief is particularly warranted here, as Plaintiff continues to receive calls and there is real risk of future harm.*

Defendants also move pursuant to FED. R. CIV. P. 12(b)(1) to dismiss Plaintiff's claims for injunctive relief, arguing Plaintiff lacks Article III standing to obtain injunctive relief. Specifically, Defendants argue Plaintiff has not shown any risk of future injury. Yet Plaintiff's allegations do establish a risk of future injury. The Plaintiff alleged that Defendants continue to make illegal calls. (Compl. ¶ 50). As such, an injunction is necessary to stop their calling conduct. These allegations plausibly establish a risk of future harm.  As a telephone user, Plaintiff is at risk of future telemarketing calls from Defendants. Defendants present no facts or arguments whatsoever rebutting the risk of such calls from Defendants in the future and do not even admit that they are knocking it off. And though the Plaintiff has adequately alleged future harm, he is not required under the TCPA's statutory injunctive relief:

> The Telephone Consumer Protection Act, 47 U.S.C. § 227 (b)(3), creates a private right of action and allows a Court to order injunctive relief, monetary relief, and treble damages. Plaintiff is not seeking a preliminary injunction, which would require a showing of likelihood of success on the merits and irreparable harm. Defendant argues that Plaintiffs allegations do not suffice to establish either prong, and are inadequate to state a claim for treble damages.

> In *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1098 (11th Cir. 2004), the Eleventh Circuit differentiated statutory and non-statutory injunctions. It specified that where a statute bans certain conduct or establishes certain rights, a court may grant an injunction to enforce the statute. Where plaintiff sufficiently alleges a claim for a statutory violation, that is all that is required to request injunctive relief in a complaint. To request treble damages, the Plaintiff must allege a willful violation. Here, Defendant argues the Plaintiff does not sufficiently allege the traditional elements for injunctive relief or for an award of treble damages. Because the Plaintiff need not allege the traditional elements for injunctive relief, the Court denies the motion on that issue.

*Gutierrez v. Fla. Advert. & Mktg. Corp.,* 387 F. Supp. 3d 1410, 1411 (S.D. Fla. 2019). The Court in *Abramson v. AP Gas & Elec. (PA), LLC*, Civil Action No. 22-1299, 2023 U.S. Dist. LEXIS 18996, at *14-15 (W.D. Pa. Feb. 6, 2023) denied a similar motion to dismiss:

Here, along with allegations that AP Gas is aware of the requirements of the TCPA, Abramson alleges the elements of a TCPA claim to satisfy a demand for injunctive relief: (1) ongoing telemarketing by AP Gas using automated calls to send prerecorded messages; (2) Abramson's receipt of at least eleven prerecorded calls from AP Gas between August 9 and 18, 2022, without his consent; and (3) injury in the form of disturbed solitude and annoyance as well as being temporarily deprived of the use of his phone. These allegations adequately place him within the zone of interests protected by the TCPA, and allege a pattern and practice by AP Gas of violating the TCPA. These allegations are accepted as true, and permit an inference of future violations that the TCPA seeks to enjoin.

This Court should do the same.

## V.    CONCLUSION

This Court must deny Defendants' motion to dismiss in its entirety. Alternatively, to the extent that the Court finds that additional questions remain, it should permit the Plaintiff to amend to correct the deficiencies as necessary.

RESPECTFULLY SUBMITTED AND DATED this January 8, 2025.

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, Pennsylvania 19038
> Phone: 215-225-5529 (CALL-LAW)
> Facsimile: 888-329-0305
> a@perronglaw.com
>
> *Attorney for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

Dated: January 8, 2025.

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.